IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JONAS W. PERKINS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 8528 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| FLOSSMOOR POLICE DEPARTMENT, | ) | |
| UNIT 721 OFFICER CAGLE, UNIT 724 | ) | |
| OFFICER BAPP, REPORTING OFFICER | ) | |
| KARNER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jonas W. Perkins III, sues three officers of the Flossmoor Police Department, Mark Cagle, Lisa Bapp and Dennis Karner, for violations of his civil rights and malicious prosecution. This case is before the Court on defendants' motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants the motion in part and denies it in part.

## BACKGROUND

Pursuant to Local Rule 56.1(a)(3), defendants have filed, along with their motion for summary judgment, a statement of material facts as to which they contend there is no genuine issue. Perkins was required, under Local Rule 56.1(b)(3), to file a response to defendants' statement of facts and a separate statement of any additional material facts that militate against granting summary judgment for defendants. Perkins has filed neither a response to defendants' statement of facts nor a statement of additional facts. The Court is entitled to require strict compliance with Rule 56.1, and it therefore considers Perkins to have admitted the facts contained in defendants' statement, to the extent the evidence in the record supports defendants'

assertions, and disregards any factual assertions Perkins may make in his response brief. *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316-17 (7th Cir. 1995); *Holshouser v. Abbott Labs.*, 31 F. Supp. 3d 964, 967 (N.D. Ill. 2014). The facts that are relevant and material to the disposition of the present motion are as follows.

At approximately 3:30 a.m. on December 12, 2010, Perkins was sitting in his car with the engine and lights off on the 2100 block of Evans Road in the Village of Flossmoor. (Defs.' LR 56.1(a)(3) Stmt. ¶ 1.) Officer Cagle, who was patrolling the neighborhood in a marked police vehicle, took notice of the car because a Flossmoor ordinance prohibits parking on the street between 3:00 a.m. and 6:00 a.m. (*Id.*, Ex. 7, State Criminal Trial Tr. at 7.) Cagle pulled up to Perkins's car and shined a spotlight on it. (*Id.* ¶ 11.) Perkins exited the vehicle and told Cagle that his car broke down as he was passing through the area. (*Id.* ¶ 12.)

Cagle asked for identification, and Perkins responded that he had not been driving,[1] although he was sitting in the driver's seat when Cagle approached him. (*Id.* ¶¶ 11, 15; Ex. 1, at 107-08.) He produced a state identification card. (*Id.* ¶ 17.) While Cagle was speaking with Perkins, Cagle noticed a set of footprints in the snow going up the driveway at 2149 Evans Road, and he asked Perkins if he had been visiting anyone. (*Id.*, Ex. 7, at 9.) Perkins said he was not visiting anyone in the area; he stated that he had just had car trouble as he was passing through. (*Id.*, Ex. 1, Perkins Dep., at 109, 117.) Cagle found it strange that someone would use Evans Road, which is a residential side street, to pass through the area. (*Id.* ¶ 14.)

Cagle asked Perkins to attempt to start his car again, and the car started immediately. (*Id.* ¶ 18.) Perkins told Cagle that he would be on his way, but Cagle ordered him out of the car.

---

[1] He now admits that this statement was untrue, and he had driven the car, unaccompanied, to the location on Evans Road where he encountered Officer Cagle. (Defs.' LR 56.1(a)(3) Stmt. ¶ 7.)

2

(*Id.*)  Cagle placed Perkins in handcuffs and put him in Cagle's vehicle.  (*Id.* ¶ 25.)  Cagle radioed for backup; Perkins heard him say that he saw a gas can and a tool box with a drill on the ground.  (*Id.* ¶¶ 27-28.)

At 3:48 a.m., in response to Officer Cagle's call for backup, Officer Bapp arrived on the scene.  (*Id.* ¶ 29.)  Officer Cagle set off to follow the footprints while Officer Bapp remained behind with Perkins.  (*Id.* ¶¶ 27-30.)

Officer Cagle found that the footprints led to the garages of a number of residences in the vicinity, including those of Michael Ryan and John Ruggles.  (*Id.* ¶¶ 44.)  Ryan and Ruggles identified certain items as missing from their garages, including a gas can, drills, tools, and a portable DVD player and movie.  (*Id.* ¶¶ 45-46, 57.)  Cagle has stated on numerous occasions that, before placing Perkins in handcuffs, he saw these items in Perkins's open trunk.  (*Id.*, Ex. 7, at 14-15; Ex. 11, Suppression Hr'g Tr., at 16; Ex. 12, Preliminary Hr'g Tr., at 5.)  Perkins has stated on numerous occasions that his trunk was closed and these items were never in his trunk at any point before he was placed in handcuffs.  (*Id.*, Ex. 1, at 118; Ex. 5, Compl., at 5; Ex. 7, at 95; *but see id.*, Ex. 12, at 17-18 (Perkins suggesting at his suppression hearing that Cagle found a toolbox and gas can in Perkins's open trunk).)

At some point, Officer Cagle opened up the door of the vehicle in which Perkins was sitting, and Perkins fell to the ground, injuring himself in the process.  (*Id.* ¶¶ 32, 59.)  Perkins alleges that Cagle repeatedly "thrash[ed him] against the car." (*Id.*, Ex. 1, at 122.)

Perkins was placed under arrest and transported to the Flossmoor police station.  (*Id.* ¶¶ 60-61.)  He alleges that he was strip-searched after he arrived at the station.  (*Id.*, Ex. 1, at 153.)

Detective Karner drove to the scene of the arrest and began to investigate the case.  (*Id.* ¶¶ 62-64.)  He spoke with Officer Cagle at the scene, and Officer Cagle pointed out the

3

footprints he had followed. (*Id.* ¶ 65.) Later that morning, Karner spoke to Perkins at the police station. (*Id.* ¶ 66.) Perkins complained that Cagle had "roughed [him] up." (*Id.*, Ex. 1, at 130.)

Perkins was charged with two counts of burglary. (*Id.* ¶ 72.) Perkins filed this lawsuit *pro se* on December 7, 2011, while awaiting trial on the burglary charges. (Compl. at 1-2, 4-5.) United States District Court Judge Robert M. Dow, who previously presided over this case, stayed the case pending resolution of the state criminal charges. (Minute Order, ECF No. 26.)

Perkins filed a *pro se* motion to quash arrest and suppress evidence in his criminal case, contending that there was no probable cause for his arrest. After a hearing, the motion was denied. (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 74-75, 78.) Following a jury trial, Perkins was acquitted of the burglary charges in June 2014. (*Id.* ¶ 79.)

Perkins subsequently retained counsel in this case. Although Perkins never filed an amended complaint through counsel to more precisely define the asserted grounds for relief, the parties agree that Perkins alleges violations of Perkins's Fourth Amendment rights pursuant to 42 U.S.C. § 1983 for arresting him without probable cause, using excessive force and conducting an unlawful strip search, as well as malicious prosecution under state law. (*See* Jt. Status Report, ECF No. 60.)

## DISCUSSION

In the present motion for partial summary judgment, defendants seek judgment in their favor on the false arrest claim as to all three defendants; on the excessive force claim as to Karner and Bapp; on the strip search claim as to Karner and Bapp, and on the malicious prosecution claim as to all three defendants. Plaintiff concedes that the Court should grant judgment to Karner on the false arrest, strip search and excessive force claims and Bapp on the strip search claim.

4

## I. FALSE ARREST

Perkins claims that Cagle and Bapp arrested him without probable cause, in violation of his Fourth Amendment rights, and they are both liable for the arrest under § 1983. He contends that when Officer Cagle handcuffed him and put him in the back of a police vehicle, even if, as he testified at trial, he told Perkins that he was not under arrest (Defs.' LR 56.1(a)(3) Stmt., Ex. 1, at 107), he so completely restrained Perkins's liberty that his action amounted to a de facto arrest. Further, Perkins contends that at the time he was handcuffed, Cagle did not have probable cause to arrest him. The facts known to Cagle at that time, viewed in the light most favorable to Perkins,[2] were that Perkins claimed to have broken down on Evans Road, he denied visiting anyone in the area, and there were footprints in the snow leading up a nearby driveway. According to Perkins, these facts do not amount to probable cause to arrest someone for burglary.

Cagle maintains that, regardless of whether Perkins's behavior was suspicious enough to warrant an investigatory detention on suspicion of burglary and regardless of whether the detention amounted to a de facto arrest, Cagle knew facts indicating that Perkins committed traffic offenses—namely, parking on the street between 3:00 a.m. and 6:00 a.m., in violation of a Flossmoor ordinance, and driving without a license. According to Cagle, these minor traffic offenses gave him probable cause to arrest Perkins, notwithstanding that they are punishable by fines rather than imprisonment. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the

---

[2] There is conflicting evidence as to whether Cagle had seen certain items that he suspected were stolen. As stated above, Cagle has stated that he saw a number of items, including a gas can, drill, tool bag and DVD player, within Perkins's open trunk, in plain view. Perkins's position as to where these items were at the time he was handcuffed has varied, but at his criminal trial, Perkins testified that his trunk was not open and these items were not in it, and his theory was that Cagle went into to the victims' garages and brought items back to Perkins's car to frame him for burglary. (Defs.' LR 56.1(a)(3) Stmt., Ex. 7, at 95, 149.)

5

offender."); *Ramos v. City of Chi.*, 716 F.3d 1013, 1018 (7th Cir. 2013) ("We have held that a traffic violation can constitute probable cause for an arrest, including driving without a license."); *People v. Taylor*, 902 N.E.2d 751, 758 (Ill. App. Ct. 2009) ("Besides *Atwater* . . . , in Illinois, police officers have additional authority to place a defendant under custodial arrest for committing a traffic infraction that is punishable only by a fine. Such authority is codified in both the Code of Criminal Procedure and the Illinois Vehicle Code."). Further, whether Cagle arrested Perkins for the traffic offenses or for burglary is irrelevant to the probable cause determination; the inquiry is simply whether Cagle was subjectively aware of facts that would objectively give a reasonable officer probable cause to believe that Perkins had committed an offense, even if it is not the offense for which he was arrested. *See Abbott v. Sangamon Cty.*, 705 F.3d 706, 715 (7th Cir. 2013) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *see also Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 n.2 (10th Cir. 2006) (even if there was no probable cause to arrest suspect for officer's stated reason, there was probable cause to arrest for driving without insurance, under *Atwater*).

    **A. Parking On The Street**

At the time of the incident, a Flossmoor ordinance prohibited parking on the street between 3:00 a.m. and 6:00 a.m. (Defs.' LR 56.1(a)(3) Stmt., Ex. 8.) Perkins contends that the ordinance "specifically exempts motorists whose car has broken down." (Resp. at 3.) Even if there is any such exemption,[3] the facts show that Officer Cagle had probable cause to believe that Perkins's car had not broken down and he had intentionally parked his car there, in violation of the ordinance. Perkins told Officer Cagle that (1) his car had broken down, although it started

---

[3] To the extent Exhibit 8 to defendants' Local Rule 56.1(a)(3) statement is a true, correct and complete copy of the ordinance as it stood at the time, the ordinance does not "specifically exempt motorists whose car has broken down." The only apparent exceptions are for physicians in an emergency and postal workers after 5:00 a.m. However, in their reply brief, defendants do not dispute the existence of an exception for motorists experiencing car trouble. The Court will assume for present purposes that the Flossmoor Municipal Code contains some applicable exception in a section of the Code that the parties have not provided.

6

right up when Cagle asked him to start it;[4] (2) he was just passing through, although Evans Road is a narrow residential side street, not a thoroughfare; (3) he had not personally been driving the car, although no one else was present and Perkins was in the driver's seat with the key in the ignition when Cagle approached him; and (4) he had not visited anyone in the area, although footprints seemed to lead from his car to one or more of the houses on Evans Road. Almost all the information Perkins gave Cagle as to how he came to be on Evans Road at 3:30 a.m. seemed to be contradicted by other facts within Cagle's knowledge or observation. Even a relatively credulous officer might have been skeptical of this explanation.

In considering Cagle's motion for summary judgment, this Court is required to view all the facts in the light most favorable to Perkins, but Cagle was not required to do so on the morning of December 12, 2010. *See Bridewell v. Eberle*, 730 F.3d 672, 676 (7th Cir. 2013). To determine whether an officer had probable cause, a court simply asks whether the officer had subjective knowledge of facts that would give a reasonable officer cause to believe that a crime had probably been committed. The officer need not assume that everything a suspect tells him is true. If he reasonably believes, in the totality of the circumstances, that criminal activity is afoot, despite a suspect's protestations to the contrary, he is entitled to arrest the suspect and allow a court to sort out later whether or not the suspect in fact committed a crime. *See Hernandez v. Sheahan*, 455 F.3d 772, 775 (7th Cir. 2006) ("Police are entitled to act on information that may be inaccurate and let the courts determine whether to credit a suspect's claim of innocence.").

**B. Failing to Produce A License**

Because the Court has concluded that there was probable cause to believe that Perkins had violated the Flossmoor ordinance prohibiting overnight parking, it need not address Cagle's argument that he also had probable cause to believe that Perkins had been driving without a

---
[4] (*See* Defs.' LR 56.1(a)(3) Stmt., Ex. 11, at 20.)

license, but the Court notes that, based on some of the same facts, Cagle would prevail on this argument as well. It is undisputed that Perkins did not have a valid license at the time, and when Officer Cagle asked him for identification, he produced a state identification card, not a driver's license, and told Officer Cagle that he had not been driving.[5] (Defs.' LR 56.1(a)(3) Stmt., ¶¶ 8, 15-17.)

Perkins contends that Officer Cagle never saw Perkins driving at any point, so he was under no obligation to produce a license. But officers may infer from the circumstances that a particular suspect was driving a car. *See People v. Lurz*, 885 N.E.2d 433, 439 (Ill. App. Ct. 2008) (officer could infer from the circumstances that intoxicated suspect had been driving); *see also People v. Slinkard*, 841 N.E.2d 1, 4 (Ill. App. Ct. 2005) ("[W]here . . . the owner is standing near the vehicle after an accident, the trier of fact reasonably may infer that the owner of the vehicle was its driver.").

As stated above, although Perkins told Officer Cagle that he had not personally been driving the car when it broke down while passing through the area, no one else was present and Perkins was in the driver's seat with the key in the ignition when Cagle approached him. (*Id.*, Ex. 1, at 107.) Perkins contends that Cagle never actually asked him to produce a license but only for "identification" (*id.*, Ex. 1, at 114), but it is undisputed that Perkins's immediate response to Cagle's initial request for identification was, "I wasn't driving." (*Id.* ¶15.) When Cagle reiterated his request for identification, Perkins produced a state identification card. (*Id.*, Ex. 7, at 9.) It would have been reasonable to infer that Perkins could not produce a driver's license. Further, Perkins admitted both in the complaint and at his deposition that after he started his car,

---

[5] It is also undisputed that the LEADS system, which officers use to check the status of drivers' licenses, was down at the time, so Officer Cagle could not have known with any certainty that Perkins had no valid license. (Defs.' LR 56.1(a)(3) Stmt., Ex. 11, at 14.) However, this fact is of small importance because a motorist's failure to produce a license is itself an offense. *Ramos*, 716 F.3d at 1018.

he indicated to Cagle that he intended to drive away. (*Id.*, Ex. 1, at 110 ("I said, I got my car started, I would like to be on my way."), Ex. 5, at 4 ("My car started up[,] Officer Cagle ask[ed] me to turn off my car[,] I said that I'm fine now thanks I [will] be on my way . . . .").) *See United States v. Jackson*, 377 F.3d 715, 717 (7th Cir. 2004) ("Once [driver, traveling alone,] failed to produce a driver's license, the police could not put him back in the car and watch him motor off."). It was fair to infer from the circumstances that Perkins could not produce a driver's license and had been driving.

### C. Officer Bapp

Perkins asserts in his response brief that Bapp is "just as liable as Cagle" on the false arrest claim because she "acquiesced in the detainment of Jonas Perkins." (Resp. at 6.) He does not argue that she is liable except to the extent that Cagle is liable. Because the Court has determined that a reasonable jury could not find Cagle liable for false arrest because he had probable cause to believe that Perkins had committed an offense, it must conclude that Bapp cannot be liable either.

Perkins has already conceded that Karner is not liable for false arrest. The motion for summary judgment is granted as to all three defendants on the false arrest claim.

## II. EXCESSIVE FORCE

Cagle does not move for summary judgment on the excessive force claim, and Perkins concedes that judgment should be granted for Karner. The parties' only dispute is over whether judgment should be granted for Bapp.

Defendants contend that even if it is true that Bapp saw Cagle using excessive force against Perkins, there are no facts in the record that could support any finding that she had any realistic opportunity to intervene. *See Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

Perkins testified at his deposition that Cagle dragged Perkins out of the back of a police car and repeatedly "thrash[ed him] against the car." (Defs.' LR 56.1(a)(3) Stmt., Ex. 1, at 122.) While Cagle was allegedly "roughing [Perkins] up," Bapp was allegedly "standing right next to him." (*Id.*, at 123.) A reasonable jury could choose to credit this testimony, if repeated at trial, despite the fact that Cagle and Bapp tell a markedly different story. There is a genuine issue of fact as to whether Bapp failed to stop Cagle from using excessive force despite having a reasonable opportunity to intervene. The motion for summary judgment is denied as to the excessive force claim against Bapp.

### III. STRIP SEARCH

Cagle has not moved for summary judgment on this claim, and Perkins does not oppose entering judgment in favor of Bapp and Karner. The motion for summary judgment is granted as the strip search claim against Bapp and Karner.

### IV. MALICIOUS PROSECUTION

Perkins claims that defendants are liable for malicious prosecution under Illinois law. To prevail on a claim of malicious prosecution, Perkins must prove (1) the defendant commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff; (3) there was an absence of probable cause for such proceeding;[6] (4) the presence of malice; and (5) damages resulting to the plaintiff. *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010).

#### A. Officer Cagle

---

[6] Probable cause, in this context, means probable cause for the offense charged, not merely probable cause for an arrest that meets the requirements of the Fourth Amendment. *See Johnson v. Saville*, 575 F.3d 656, 662 (7th Cir. 2009); *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (Ill. App. Ct. 2000). For purposes of pleading and proving Perkins's claim of malicious prosecution for burglary, it is irrelevant that the Court has determined that he was arrested with probable cause to believe he had committed certain traffic offenses. *See Williams v. City of Chi.*, 733 F.3d 749, 759 (7th Cir. 2013).

Cagle contends that the undisputed facts show that there was probable cause to charge Perkins with burglary in this case, and probable cause is an absolute defense to a malicious prosecution claim. Cagle points out that the state criminal court twice concluded that there was probable cause for Perkins's arrest on suspicion of burglary, based on Perkins's suspicious answers to Officer Cagle's questions, the footprints in the snow, and the gas can and tools found at the scene of the arrest.

It is true that the state criminal court found that there was probable cause for the burglary charges, but that finding is entitled to no preclusive effect in this civil rights case to the extent that Perkins's theory is that Cagle intentionally misrepresented or concealed material facts during the state criminal proceedings. *See Brokaw v. Weaver*, 305 F.3d 660, 669-70 (7th Cir. 2002) (holding that a § 1983 plaintiff may proceed on a claim that he was held without probable cause, even if the state court previously found that there was probable cause, if the prior finding was allegedly "based on the [§ 1983] defendant's intentional misrepresentation or concealment of material facts") (citing *Schertz v. Waupaca Cty.*, 875 F.2d 578, 582 (7th Cir. 1989)); *see also Lipscomb v. Knapp*, No. 07 C 5509, 2009 WL 3150745, at *7 (N.D. Ill. Sept. 30, 2009) (citing *Brokaw*); *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (Ill. App. Ct. 2000) ("It is the actual state of mind of the one commencing the prosecution, and not the actual facts of the case or the guilt or innocence of the accused, which is at issue."). Perkins claims that Cagle lied about seeing the gas can, drills, tools, DVD player and DVD in Perkins's trunk; his theory at trial (where he was acquitted) was that Cagle himself removed these items from certain garages in the vicinity to frame Perkins for burglary. Perkins was not represented by his present counsel

at either his preliminary hearing or his suppression hearing, and his theory that Cagle lied about what was in the trunk was not fully developed and litigated at those early proceedings.[7]

Without the evidence that was allegedly fabricated by Cagle—namely, his testimony that he found a gas can and other items taken from garages in the area in Perkins's trunk and noticed that footprints led from Perkins's car to the garages—there would be little or nothing to connect Perkins to any alleged burglary. Whether there was an absence of probable cause, for purposes of the tort of malicious prosecution, depends on the truth or falsity of Cagle's testimony, which the parties dispute. There is a genuine issue of material fact that precludes summary judgment for Cagle.

Cagle contends that several factual assertions Perkins made in his *pro se* complaint are inconsistent with his theory of the case at his criminal trial or with his deposition testimony in this case, and he must be held to these inconsistent statements as admissions, rather than permitted to survive summary judgment based on subsequent statements that manufacture an issue of fact. For example, Perkins suggested in his complaint that Officer Cagle mentioned the gas can and tools when he radioed for backup, and it was only after Officer Bapp arrived, in response to that call, that he went off to investigate the garages; if he had seen a gas can and tools at the scene of the arrest before he ever entered any garage, then he did not remove the items from the garage and bring them to the scene himself. Although this inconsistency certainly presents a difficulty for Perkins, the Court is unwilling to grant summary judgment based on Perkins's recitation of the facts in his *pro se* complaint. It is axiomatic that *pro se* complaints are to be liberally construed. *Wilson v. Town of Clayton*, 839 F.2d 375, 378 (7th Cir. 1988); *Cunliffe v. Wright*, 51 F. Supp. 3d 721, 729 (N.D. Ill. 2014). Perkins's account of the events leading to

---

[7] Indeed, at his suppression hearing, which Perkins litigated *pro se*, his position appeared to be that the items *were* in the trunk, but the evidence should be suppressed because Cagle had no right to search it. (Defs.' LR 56.1(a)(3) Stmt. ¶ 1, Ex. 12, at 17-18.)

his arrest and prosecution in his *pro se* complaint is not altogether clear, and he is entitled to an opportunity to explain any apparent contradictions at trial.

### B. Officer Bapp and Detective Karner

Bapp and Karner contend that they are entitled to summary judgment because they did not "commence or continue" the criminal proceeding against Perkins. An officer "commences or continues" the proceeding if he or she "played a significant role in causing the prosecution of the plaintiff." *Rodgers*, 733 N.E.2d at 842.

Plaintiff has introduced no evidence that Bapp or Karner played a significant role in causing the prosecution, beyond relying on Officer Cagle's investigation. There is no evidence that they had any reason to believe that Cagle had lied or fabricated evidence, and they can hardly be responsible for any malicious acts Cagle undertook without their knowledge before they ever arrived at the scene or laid eyes on Perkins. Supplying evidence on which a prosecution is based amounts to "commencing or continuing" the prosecution, but mere presence at the scene of an unlawful arrest or participation in a criminal investigation in some ancillary role does not. *See Padilla v. City of Chi.*, 932 F. Supp. 2d 907, 929 (N.D. Ill. 2013). Summary judgment is granted for Bapp and Karner on the malicious prosecution claim.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part defendants' motion for partial summary judgment [70]. On the false arrest claim, summary judgment is granted for all three defendants. On the excessive force claim, summary judgment is granted for Detective Karner, but denied to Officer Bapp. On the strip search claim, summary judgment is granted for Officer Bapp and Detective Karner. On the malicious prosecution claim, summary judgment is granted for Officer Bapp and Detective Karner, but denied to Officer Cagle. The remaining claims are the excessive force claims against Officers Bapp and Cagle, the strip search claim against Officer Cagle, and the malicious prosecution claim against Officer Cagle. A status hearing is set for October 1, 2015 at 9:30 a.m.

**SO ORDERED.**

ENTERED: September 11, 2015

_____
**HON. JORGE L. ALONSO**
**United States District Judge**